### A00A2055. SUMTER REGIONAL HOSPITAL, INC. et al. v. SUMTER FREE PRESS, INC. et al.
(546 SE2d 831)

BLACKBURN, Chief Judge.

On interlocutory grant, Sumter Regional Hospital, Inc. and Jerry Adams, its Chief Executive Officer, appeal the trial court's denial of their motion for summary judgment against Sumter Free Press, contending that statements made by Adams to four Americus

businesses could not, as a matter of law, constitute tortious interference with Sumter Free Press' business relations. For the reasons set forth below, we reverse the trial court.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c).

*Lau's Corp. v. Haskins.*[1]

1. Viewed in the light most favorable to Sumter Free Press, the record contains no support for the newspaper's claims for tortious interference.

> The essential features of a cause of action for tortious interference with business relations are that the defendant, acting improperly, without privilege, and with the malicious intent to injure plaintiff, induces a third party not to enter into or to continue a business relationship with plaintiff, which causes plaintiff financial injury.

*Lively v. McDaniel;*[2] *Janet Ricker Builder v. Gardner.*[3]

We note at the outset that Adams' conversations with three of the four businesses with whom Adams had contact did not result in any financial injury to Sumter Free Press and did not, therefore, constitute tortious interference with its business relations as to those incidents. We therefore focus only on Adams' fourth communication with Linda McLendon in determining whether or not summary judgment should have been granted.

Beginning in 1996, J. Frank Myers, Jr. was a vociferous critic of the hospital and Adams. Myers voiced his criticisms not only in letters to the editor in the Americus Times-Recorder, but also in paid advertisements with the newspaper. Additionally, Myers mailed flyers to members of the public, which flyers accused Adams, in part, of mismanagement and of being a liar and a thief and encouraged Adams' removal.

In March 1998, Myers founded Sumter Free Press, which he used as a public vehicle to disseminate his criticisms of Adams and the hospital. Adams, clearly upset by the accusations printed in the Sumter Free Press, decided that he would not patronize businesses

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[2] *Lively v. McDaniel*, 240 Ga. App. 132, 134 (3) (522 SE2d 711) (1999).
[3] *Janet Ricker Builder v. Gardner*, 244 Ga. App. 753, 755 (4) (536 SE2d 777) (2000).

that advertised in that paper because, by doing so, he would be "financing [his] own demise." Myers deposed that McLendon, Adams' barber, told him that she had to cancel her advertisement with Sumter Free Press because Adams had told her that he would not do business with those who advertized with Sumter Free Press and she did not want to lose Adams' business.

McLendon was not deposed, and there is no evidence, having probative value, which establishes this fact. During Adams' deposition, he testified that he had told McLendon that Myers was trying to destroy him personally and that he had a problem spending his money where his money would then be used to finance the efforts to cause him a problem. On cross-examination, he was asked: "Q. Did you request that she not advertise with Sumter Free Press? A. No."

There is no probative evidence of record that Adams asked McLendon not to advertise in the Sumter Free Press. Neither is there evidence that Sumter Free Press suffered any losses as a result of Adams' conduct. Myers' testimony concerning McLendon's alleged statement is hearsay, which has no probative value, even when admitted without objection.[4] See OCGA § 9-11-56 (e); *Sykes v. City of Atlanta*[5] (evidentiary rules apply on motion for summary judgment); *Davis v. Haupt Bros. Gas Co.*[6] (hearsay has no probative value). Thus, even construing the facts in a light most favorable to Sumter Free Press, there is no nexus between Adams' conduct and any loss of business by Sumter Free Press. See *Calhoun v. Cullum's Lumber Mill*[7] (upholding grant of summary judgment to defendants on tortious interference with contract claim because plaintiff could not show nexus between its unsuccessful attempt to purchase certain property and the defendants' actions).

2. We need not address the defendants' enumerations regarding conspiracy and boycott claims because the complaint does not assert such claims and Sumter Free Press acknowledges this fact in its brief. Because we find that the trial court erred by denying appellants' motion for summary judgment, defendants' remaining enumerations of error, which relate to damages, are rendered moot.

*Judgment reversed. Eldridge and Barnes, JJ., concur.*

---

[4] We note that had McLendon testified to the facts attributed to her by Myers, or had there been admissions of such facts by Adams, or other evidence having probative value, a jury question would have been presented, and the denial of Adams' motion for summary judgment would have been proper.

[5] *Sykes v. City of Atlanta*, 235 Ga. App. 345, 348 (5) (509 SE2d 395) (1998).

[6] *Davis v. Haupt Bros. Gas Co.*, 131 Ga. App. 628, 629 (2) (206 SE2d 598) (1974).

[7] *Calhoun v. Cullum's Lumber Mill*, 247 Ga. App. 859 (545 SE2d 41) (2001).

DECIDED MARCH 6, 2001 —
RECONSIDERATION DENIED MARCH 28, 2001 — 

*Alston & Bird, W. Terence Walsh, Angela T. Burnette, Michael A. Fennessy*, for appellants.

*Harper & Barnes, John V. Harper, James F. Myers III*, for appellees.