[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2011
JOHN LEY
CLERK

_____

No. 11-10317

_____

D. C. Docket No. 5:08-cv-00098-LGW-JEG

GOWEN OIL COMPANY, INC.,

Plaintiff-Appellant,

versus

GREENBERG TRAURIG, LLP,
GREENBERG TRAURIG, P.A., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(December 13, 2011)

Before EDMONDSON and ANDERSON, Circuit Judges, and LAWSON,* District
Judge.

PER CURIAM:

_____

*Honorable Hugh Lawson, United States District Judge for the Middle District of Georgia, sitting
by designation.

This is an unusual case to which we have devoted considerable study.  We have also had the benefit of oral argument.   Plaintiff Gowen had a right of first refusal to buy three stations from United, owned by Sekhon.  Personal troubles caused Sekhon to want to sell the stations without delay.  Abraham, through his company Global (hereinafter referred to collectively as Abraham), became interested in purchasing the stations at about the same time, in December 2007.  Abraham engaged financial consultant Weingard, and attorney Williams, who subsequently associated Greenberg Traurig, to implement his desire to accomplish a rapid purchase of the stations.  The purchase was completed on January 18, 2008.  A decision was made not to comply with the Georgia Bulk Sales Act, and no notification of the impending sale was given to Plaintiff or to other creditors of United.  Thus, Plaintiff and any other creditor had a cause of action in rem against the transferred assets in the hands of transferee Abraham.  O.C.G.A. § 11-6-104 (2002); Johnson v. Mid States Screw & Bolt, 733 F.2d 1535, 1536 (11th Cir. 1984).

Plaintiff sued Abraham and obtained a judgment in the amount of approximately $1.7 million.  Thereafter, in the instant suit, Plaintiff sued Defendants, Abraham's attorneys, and financial consultant with respect to the transaction.  Plaintiff claims that Defendants conspired with Abraham to defraud

2

Plaintiff and to tortiously interfere with Plaintiff's contractual right of first refusal. The district court entered summary judgment for the Defendants. On appeal, Plaintiff challenges the district court's ruling as to Plaintiff's claim of fraud and Plaintiff's claim of tortious interference with contractual relations.

We turn first to Plaintiff's fraud claim. We agree with Defendants that Plaintiff failed to adduce sufficient evidence to create a genuine issue of material fact with respect to fraud. The only evidence of fraud to which Plaintiff points is that neither Defendants nor Abraham gave Plaintiff notice of the impending sale, as would have been required had they decided to pursue the procedures provided for in the Georgia Bulk Sales Act. Plaintiff's fraud claim is foreclosed by the opinion of the Georgia Supreme Court in Boss v. Bassett Furniture Ind. of N.C., Inc., 288 S.E. 2d 535, 559 (Ga. 1982). There, the Supreme Court of Georgia held that violations of the notice provisions of Georgia's Bulk Sales Act cannot constitute the basis for a fraud claim against the transferee. Although the Georgia Supreme Court held that the Bulk Sales Act did not preclude a fraud claim against the transferee, the Court held that any such claim had to rely on conduct other than violations of the Bulk Sales Act. Here, Plaintiff points to no evidence of fraud other than the failure of Abraham and the Defendants to give Plaintiff notice of the impending sale. Accordingly, the district court properly granted summary judgment to Defendants

3

on Plaintiff's fraud claim.

We turn now to Plaintiff's claim of tortious interference with contractual relations. Under Georgia law, the following are the elements which a plaintiff must prove:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Kirkland v. Tamplin, 285 Ga. App. 241, 243, 645 S.E.2d 653 (2007). Although the Defendants assert several other grounds upon which the judgment of the district court might be affirmed with respect to this tortious interference claim,[1] we need not address those, because we agree with Defendants that Plaintiff has not adduced sufficient evidence to create a genuine issue of material fact with respect to the first element, wrongful conduct. Georgia courts have described the element of wrongful conduct in the following manner:

> Plaintiff must show more than that the defendant simply persuaded a person to break a contract. . . . Indeed, the plaintiff must adduce evidence of improper action or wrongful conduct, which our courts have defined as constituting conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory

---

[1] Thus, we need not address the following issues: 1) whether Plaintiff adduced sufficient facts to create a genuine issue of fact as to the inducement element; and 2) whether the Plaintiff is judicially estopped.

4

tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.

Kirkland, 645 S.E.2d at 656 (quotations and citations omitted).  The primary fact upon which Plaintiff relies, in its effort to satisfy the wrongful conduct element, is the fact that Defendants and Abraham did not give Plaintiff notice of the impending sale as would have been required had they chosen to comply with the notice provisions of the Bulk Sales Act.  Although a failure to provide such notice will subject the transferred goods in the hands of the transferee to an in rem suit, the Georgia law is clear that the Bulk Sales Act provides for no in personam action against the transferee.  And we noted above that the Georgia Supreme Court in Boss held that a failure to provide such notice does not constitute fraud.  For the same reasons, we believe that the failure to provide such notice does not constitute wrongful conduct to satisfy the first element of Plaintiff's tortious interference claim.[2]  See also Tate v. Kia Autosport of Stone Mountain, 61 S.E. 2d 112, 113 (Ga.App. 2005) (rejecting plaintiff's attempt to hold a transferee liable for a tort claim when the transferee acquired assets of a transferor who had committed the tort

---

[2]    The Supreme Court of Georgia held that the remedies provided by the Bulk Sales Act are not exclusive, and thus do not preclude common law causes of action.  However, the Supreme Court held that a plaintiff pursuing such a common law action cannot rely upon violations of the Bulk Sales Act.  Boss, 288 S.E.2d at 562.

5

against plaintiff and when the sale to transferee was subject to the Bulk Sales Act, but there was no notice to creditors as required by the Act. The court held that there was no tort claim against the transferee personally in the absence of a tort claim against the transferee which was "independent from the Bulk Transfer Act").

Because Plaintiff points to no other evidence which could constitute wrongful conduct satisfying the first element,[3] we conclude that the district court properly granted Defendant's summary judgment on Plaintiff's claim of tortious interference with contractual relations.

For the foregoing reasons,[4] the judgment of the district court is

AFFIRMED.

---

[3] Plaintiff suggests vaguely that the mere fact that Defendants and Abraham induced Sekhon and United to breach their contractual obligation to Plaintiff is sufficient to establish this claim. We need not decide whether we agree with the district court that Plaintiffs also failed to adduce sufficient facts to create a jury issue on the inducement element, because we reject Plaintiff's argument that inducement alone is sufficient to establish the tortious interference claim. Under Georgia law, such inducement is merely one element. Georgia law clearly requires – in addition to the inducement element – the other elements listed above, including the element of wrongful conduct. None of the cases cited by Plaintiff support the proposition that inducement alone is sufficient to establish the tortious interference claim without regard to the other listed elements.

[4] Plaintiff argues that these Defendants are also responsible for the damages Plaintiff claims on account of Plaintiff's claim that Abraham defrauded Plaintiff after the sale by fraudulently using the access card and code (which had belonged to Abraham's predecessor, United) to obtain fuel from Plaintiff on credit. We reject this argument summarily; Plaintiff has woefully failed to adduce any evidence that Defendants were aware of any such fraud.